**Electronically Filed
Intermediate Court of Appeals
30142
19-SEP-2013
08:23 AM**

NO. 30142

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

KAREN GOO, et al., Plaintiffs/Counterclaim-
Defendants/Appellants/Cross-Appellees

v.

MAYOR ALAN ARAKAWA, Successor-In-Interest to
Mayor Charmaine Tavares, WILLIAM SPENCE, Director of Planning,
County of Maui, Successor-In-Interest to Director Jeff Hunt,
County of Maui, Defendants/Cross-Claim Defendants/
Appellees/Cross-Appellants/Cross-Appellees

and

VP AND PK(ML) LLC, KCOM Corp., Defendants/Intervenor-
Defendants/Cross-Claim Defendants/ Counterclaimants/
Cross-Claimants/Appellees/Cross-Appellees/Cross-Appellants

and

KILA KILA CONSTRUCTION,
Defendant/Cross-Claim Defendant/Cross-Claimant

and

(JOHN G.) JOHN G'S DESIGN & CONSTRUCTION, INC.,
Defendant/Cross-Claimant/Cross-Claim Defendant

and

NEW SAND HILLS LLC., Defendant/Intervenor-
Defendant/Counterclaimant/Cross-Claim Defendant/
Appellee/Cross-Appellee/Cross-Appellant

and

DAVID B. MERCHANT; JOYCE TAKAHASHI; BRIAN TAKAHASHI,
Defendants/Intervenor-Defendants

and

DIANE L. REASER, et al.,
Defendants/Intervenor-Defendants/Counter-Claimants

and

HOOKAHI, LLC, SANDHILLS ESTATES COMMUNITY ASSOCIATION,
Intervenors/Appellees/Cross-Appellees/Cross-Appellants

and

CHERYL CABEBE, GERRY RIOPTA, and MELISSA RIOPTA,
Intervenor-Defendants/Appellees/Cross-Appellants

and

DOE DEFENDANTS 1-100,
Defendants/Cross-Claim Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 07-1-0258(1))


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

This case relates to the development of the Sandhills Estates (Sandhills Estates) and the Fairways at Maui Lani (Fairways), which are residential projects in the Maui Lani Project District on the island of Maui.

This appeal arises from the Final Judgment (Final Judgment) entered on September 30, 2009 by the Circuit Court of the Second Circuit (circuit court).[1] The Final Judgment entered

---

[1] The Honorable Joel E. August presided.

judgment in favor of certain remaining Plaintiffs[2] (collectively Homeowners) as to Counts I and II of the Fourth Amended Complaint for Declaratory and Injunctive Relief and Damages (Fourth Amended Complaint). Judgment on Counts I and II were entered against, among others, Defendants/Appellees/Cross-Appellants Mayor Alan Arakawa, Successor-in-Interest to Mayor Charmaine Tavares, William Spence, Director of Planning, County of Maui, Successor-in-Interest to Director Jeff Hunt,[3] and the County of Maui (collectively the County)[4]; and Intervenors/Cross-Appellants KCOM Corp., Sandhills Estates Community Association (Association), and Hookahi, LLC. The circuit court entered judgment on Counts I and II pursuant to its "Findings of Fact, Conclusions of Law and Order Granting Plaintiffs' Motion for Partial Summary Judgment" filed on December 31, 2008 (2008 Order).

All other claims in the case were dismissed. Counterclaims by Intervenors/Cross-Appellants New Sand Hills, LLC (New Sand Hills) and VP & PK (ML), LLC (VP&PK) were among the claims dismissed by the circuit court.

In this appeal, KCOM Corp., New Sand Hills, VP&PK, and the Association are represented by the same counsel. For

---

[2] While the case was before the circuit court, claims by some of the plaintiffs were dismissed for various reasons. At the time Final Judgment was entered in September 2009, the remaining plaintiffs were Karen Goo, Ron Leinweber, Nancy Oshiro, Amber Torrecer-Paz, Reyn Tateyama, Larry Oshiro, Adrienne Owens, Yoshi Sakuma, Jane Sakuma, Lillian Torrecer, Clark Nakamoto, Scott Oshiro, Eric Engh, and Emily Engh.

[3] Pursuant to Rule 43(c)(1) of the Hawai'i Rules of Appellate Procedure, the names have been substituted to reflect the current parties.

[4] On July 15, 2008, the Homeowners' claims against Mayor Charmaine Tavares, Successor-in-Interest to Mayor Alan Arakawa, and Jeff Hunt, Director of Planning, County of Maui, Successor-in-Interest to Director Michael Foley were dismissed as being duplicative of the claims against the County. Nonetheless, these parties were named in the Final Judgment.

purposes of this opinion, these parties will be referred to collectively as "Developers."[5]

## I. Issues Raised on Appeal

On appeal, Homeowners challenge the circuit court's April 3, 2009 "Order Granting in Part and Denying in Part Plaintiffs' Motion for Award of Attorneys' Fees and Costs" (Fees/Costs Order), asserting that the circuit court "erred in denying Homeowners' request for attorneys' fees against the County under the private attorney general doctrine."

The County, in turn, cross-appeals and challenges the circuit court's rulings regarding standing, injunctive relief, indispensable parties, the interpretation of Hawaii Revised Statutes (HRS) § 46-4, the deference to be accorded to the County's interpretation of the Maui County Code (MCC), and the grant of summary judgment for Homeowners.

The Developers also cross-appeal, collectively raising challenges to the circuit court's rulings regarding exhaustion of administrative remedies, vested rights, equitable estoppel, interpretation of a unilateral agreement, summary judgment, a laches defense, and a motion to intervene.[6]

## II. Background

In Homeowners' initial Complaint filed on July 18, 2007, Homeowners asserted a total of twelve counts against the County and various entities denominated as developers or subcontractors. In Counts I and II of the Complaint, Homeowners asserted that the County, the developers, and the subcontractors of the Sandhills Estates and Fairways violated County zoning ordinances by applying a pre-1991 definition of "building height"

---

[5] Hookahi, LLC dismissed its cross-appeal and is no longer party to this appeal.

[6] The Association filed a separate opening brief from a brief filed by New Sand Hills, VP&PK, and KCOM.

for the homes being built. In the subsequent counts, Homeowners alleged, *inter alia*, various claims for negligence, nuisance, emotional distress, and trespass related to the development-related activities. The Complaint sought declaratory relief, injunctive relief, and damages. Subsequently, Homeowners filed a number of amended complaints adding parties, but the substantive counts remained the same.

Over the objection of Homeowners, the circuit court granted a motion to bifurcate Counts I and II of the Complaint from the rest of the counts in the Complaint. As a result, this case proceeded only as to Counts I and II, which sought declaratory and injunctive relief related to the height restriction.

At issue is whether a pre-1991 definition of "building height" in a county ordinance applies to the Sandhills Estates and Fairways subdivisions, or whether a 1991 revised definition, contained in the MCC, applies. The 1991 definition provided a more limited height restriction and Homeowners contend it applied.

Zoning regulations are addressed in Title 19 of the MCC. MCC Chapter § 19.78, which was enacted in 1990 by Ordinance No. 1924 and Ordinance No. 1939, established the Maui Lani Project District and provides development standards. This chapter sets out the maximum building height of residential buildings as "two stories, not exceeding thirty feet[.]" MCC §§ 19.78.020(B)(1)(b)(iv); 19.78.020(B)(2)(b)(iv). However, MCC § 19.78 provides no formula for determining how the maximum height of thirty feet is to be measured.

In September 1990, the Maui Planning Commission approved a preliminary site plan, which the circuit court found constituted Phase II approval for the Maui Lani Project District. At that time, "building height" was defined, in relevant part, as "[t]he vertical distance <u>from finished 'grade'</u> to the highest

5

point of the finished roof surface . . . ." The Permanent
Ordinances of the County of Maui § 8-1.2 (1971) (emphasis added).
In other words, if landfill was used to raise the elevation of a
lot and then a house was built, the height of the house would be
measured from the new elevation or "finished grade" created by
the addition of landfill.

On September 4, 1991, the County adopted Ordinance
No. 2031, which revised the definition of "building height" as
follows: "'Building height' means the same as 'height'" and
"'[h]eight' means the vertical distance measured from a point on
the top of a structure to a corresponding point directly below on
the natural or finish grade, whichever is lower."
MCC § 19.04.040 (emphasis added). Under this new definition, if
fill has been added, the height of the building is measured from
the lower natural grade.

The County and Developers contend that the pre-1991
height definition applies to Sandhills Estates and Fairways
because those subdivisions had received Phase I and Phase II
project district development approval by September 18, 1990,
approximately one year before the 1991 change of definition
restricted building height.

The circuit court disagreed, and instead determined
that the 1991 definition applied to the two subdivisions. On
December 31, 2008, the court entered the 2008 Order, which
provides, in relevant part:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:
>
> 1. The Maui Lani Project District, as a whole, is subject to the residential height restriction as determined in 1991 and codified at Maui County Code § 19.04.040, which states that building height "means the vertical distance measured from a point on the top of a structure to a corresponding point directly below the natural or finish grade, whichever is lower."
>
> 2. Defendant, County of Maui, is enjoined from taking any action which conflicts with the Court's determination of the applicable height restriction relative to the Sandhills project and the Fairways project including,

6

but not limited to, the issuance of building permits the result of which would be inconsistent with Maui County Code § 19.04.04.

3.    This Order shall remain in effect until further order of the Court.

As noted, Final Judgment was entered on September 30, 2009. Homeowners, the County, and Developers filed timely appeals and cross-appeals.

On August 28, 2011, while this case was on appeal, Ordinance No. 3848 was adopted, which further amended the provisions related to "height" in MCC § 19.04.040. In particular, Ordinance No. 3848 clarified that the pre-1991 definition of "height" -- utilizing finish grade -- applied to certain development projects. Ordinance No. 3848 provides in relevant part:

> SECTION 1. Section 19.04.040, Maui County Code, pertaining to comprehensive zoning provisions, is amended by amending the definition of "height" to read as follows:
>
> ""Height" means the vertical distance measured from a point on the top of a structure to a corresponding point directly below on the natural or finish grade, whichever is lower. <u>For structures within projects that received site plan approval in association with a project district phase II approval, step II planned development approval, or final subdivision approval after September 4, 1991, building height shall conform to the elevation as indicated on the approved site plan, which may use finish grade to measure height. For structures within project districts that received phase II approval prior to September 4, 1991, finish grade shall be used to determine height.</u>"
>
> SECTION 2. New material is underscored. . . .
>
> SECTION 3. This ordinance shall take effect upon its approval and shall apply retroactively.

Ordinance No. 3848 (bold emphasis added).[7]

_____

[7] As discussed earlier, September 4, 1991 was the date that Ordinance No. 2031 was adopted, restricting the definition of height to the lower of the natural or finished grade.

Oral argument was originally scheduled for March 30, 2011, but was continued at the request of the parties and rescheduled for September 14, 2011. Prior to the rescheduled oral argument, the parties filed a stipulation to remand, seeking to remand the case to circuit court "for further proceedings in light of passage of Maui County Ordinance 3848." The stipulation to remand was disapproved by this court without prejudice to the parties filing a proper motion or stipulation. The County thereafter filed a motion for remand or alternatively to continue the oral argument in order for the parties to participate in a mediation conference pursuant to Rule 33 of the Hawaiʻi Rules of Appellate Procedure (HRAP).

Oral argument was held as scheduled on September 14, 2011. The parties first argued the County's motion, which was taken under advisement. The parties then argued the merits of the issues raised on appeal.

Subsequent to oral argument, Homeowners filed a letter indicating that, due to misunderstandings of proposed settlement terms, they now opposed the motion for remand, but did not oppose an appellate conference. The County thereafter filed a Notice of Withdrawal of Motion for Remand asserting that the relief sought was now moot as far as remanding without oral argument, continuing oral argument, or holding an HRAP Rule 33 appellate conference in lieu of oral argument.

On September 20, 2011, this court referred the case to the appellate conference program. On December 15, 2011, the County submitted a report to this court advising that the parties were unable to settle the case. No other party submitted a report regarding the appellate conference.

On June 12, 2013, the parties were ordered to file supplemental briefs as to their respective positions concerning whether, in light of Ordinance No. 3848, any of the issues on

appeal are moot. Homeowners, the County, and the Developers timely filed supplemental briefs.

## III. Standards of Review

### A. Mootness

"It is axiomatic that mootness is an issue of subject matter jurisdiction." Hamilton ex rel. Lethem v. Lethem, 119 Hawai'i 1, 4, 193 P.3d 839, 842 (2008).

> The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.
>
> Courts will not consume time deciding abstract propositions of law or moot cases, and have no jurisdiction to do so.

Wong v. Bd. of Regents, 62 Haw. 391, 394-95, 616 P.2d 201, 204 (1980) (citations omitted).

"A case is moot if it has lost its character as a present, live controversy[.]" Kona Old Hawaiian Trails Grp. v. Lyman, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987) (citation and internal quotation mark omitted). "Put another way, the suit must remain alive throughout the course of litigation to the moment of final appellate disposition." Wong, 62 Haw. at 394, 616 P.2d at 203. "The doctrine [of mootness] seems appropriate where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal-adverse interest and effective remedy-have been compromised." Id. at 394, 616 P.2d at 203-204.

Our courts, however, recognize three exceptions to the mootness doctrine: (1) the public interest exception; (2) the "capable of repetition[,] yet evading review" exception; and (3) the collateral consequences exception. State v. Kiese, 126 Hawai'i 494, 508-09, 273 P.3d 1180, 1194-95 (2012).

In determining whether the public interest exception applies, we look "to (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for future guidance of public officers, and (3) the likelihood of future recurrence of the question." Hamilton, 119 Hawai'i at 6-7, 193 P.3d at 844-45 (citation and internal quotation mark omitted).

Courts also recognize an exception to the mootness doctrine where the legal issues are capable of repetition, yet evade review. Okada Trucking Co. v. Bd. of Water Supply, 99 Hawai'i 191, 196, 53 P.3d 799, 804 (2002).

> "The phrase, 'capable of repetition, yet evading review,' means that 'a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit[,]'" [In re Thomas, 73 Haw. 223,] 226-27, 832 P.2d [253], 255 [(1992)] (quoting Life of the Land v. Burns, 59 Haw. 244, 251, 580 P.2d 405, 409-10 (1978)) (citation omitted).

Kaho'ohanohano v. State, 114 Hawai'i 302, 333 n.23, 162 P.3d 696, 727 n.23 (2007).

Finally, the courts recognize the "collateral consequences" exception to the mootness doctrine. Hamilton, 119 Hawai'i at 7-8, 193 P.3d at 845-46. The collateral consequences exception arises when a party's reputation or legal record would be harmed as the result of a judicial action otherwise unreviewable for mootness. Id.

To invoke the collateral consequences exception:

> [T]he litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can

afford the litigant some practical relief in the future.

[*Hamilton ex rel. Lethem v. Lethem,*] 119 Hawai'i [1,] 8, 193 P.3d [839,] 846, citing *Putman v. Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256, 1262 (2006) (emphasis omitted).

Kiese, 126 Hawai'i at 509 n.11, 273 P.3d at 1195 n.11.

### B.    Attorneys' Fees

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (Sierra Club II) (citations, internal quotation marks and brackets omitted). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. In other words, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Maui Tomorrow v. State of Haw., Bd. of Land & Natural Res., 110 Hawai'i 234, 242, 131 P.3d 517, 525 (2006) (internal quotation marks, citations and brackets omitted).

The supreme court recently held that "[w]e retain the abuse of discretion standard, noting however that we review de novo whether the trial court disregarded rules or principles of law that arise in deciding whether or not a party satisfies the three factors of the private attorney general doctrine." Honolulu Const. and Draying Co. v. State of Haw., Dept. of Land & Natural Res., No. SCWC-30484, 2013 WL 4042662, at 7 (Haw. August 9, 2013).

### IV.  Discussion

### A.    Mootness

Ordinance No. 3848 settles the question of whether the pre-1991 definition of height or the more restrictive 1991 definition of height applies to the Sandhills Estates and the

Fairways subdivisions within the Maui Lani Project District. The Maui Lani Project District received Phase II approval on September 20, 1990, almost a year prior to September 4, 1991 (the date referenced in Ordinance No. 3848). Thus, pursuant to Ordinance No. 3848, "finish grade shall be used to determine height[,]" including as to the Sandhill Estates and Fairways subdivisions which are part of the Maui Lani Project District.

Because the definition of height applicable to the Sandhills Estate and the Fairways is settled, there is no present or live controversy between the parties on that issue and it is moot. Kona Old, 69 Haw. at 87, 734 P.2d at 165.

> The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

Wong, 62 Haw. at 394-95, 616 P.2d at 204.

Homeowners do not dispute that the effect of the enactment of Ordinance No. 3848 is to render moot the question of height in this case. Indeed, they state in their supplemental briefing that Ordinance No. 3848 "provides all of the relief sought on appeal by the County and the [D]evelopers, thus rendering those appeals moot." Homeowners contend, however, that their appeal of the circuit court's denial of their request for attorney's fees under the private attorney general doctrine remains.

Consistent with the Homeowners, the County asserts that the intervening legislation, Ordinance No. 3848, resolved the issue in controversy by clarifying which height definition was applicable to the two subject subdivisions. As stated by the County, "Ordinance [No.] 3848 amended the height requirement at issue so that the pre-1991 height requirements allowing height to be measured based on finish grade are now unquestionably the proper height requirements for the [Maui Lani Project District]."

Thus, contends the County, the parties no longer have adverse interests and the appeal is moot. Contrary to the Homeowners' assertion, however, the County contends that the Homeowners' claim for attorney's fees has also been rendered moot.

The Developers, in turn, maintain that "the issues on appeal are not moot because reversal of the 2008 Order is critical to Developers." According to the Developers, the County refuses to issue building permits until the 2008 Order is set aside due to the conflict between the height definition in Ordinance No. 3848 and the height definition in the 2008 Order. Developers more specifically contend the appeal is not moot for the following reasons:

> (1) the County's unwillingness to implement the new definition of "height", which conflicts with the definition of height used in the 2008 Order; (2) the susceptibility of Developers to future lawsuits being filed by other lot owners based on the interpretation of the law--as interpreted in the 2008 Order--at the time of the sale; and (3) the availability of reversal and/or vacatur of the 2008 Order as an effective form of relief for Developers and the County.

Furthermore, the Developers contend that "questions of [the] development agreement's application, jurisdiction, standing, and statutory interpretation should be addressed even if the Court determines that there is no live controversy, because those issues clearly fall within the 'public interest' exception" to the mootness doctrine.

In Lathop v. Sakatani, 111 Hawai'i 307, 141 P.3d 480 (2006), the Hawai'i Supreme Court dismissed an appeal as moot because the question of whether the circuit court erred when it expunged a lis pendens on certain property was mooted by the sale of the property during the pendency of the appeal. Id. at 310, 141 P.3d at 483.

Likewise, in Wong, the supreme court held that the appellant's claims for injunctive and declaratory relief were no longer viable because the relief the appellant requested – that

13

the appellee comply with the Hawaii Administrative Procedure Act - had been accomplished. 62 Haw. at 396, 616 P.2d at 204-05.

In the instant case, as conceded by Homeowners and the County, Ordinance No. 3848 has resolved the issue of the applicable height restriction for the Sandhills Estate and Fairways subdivisions and thus the substantive controversy between the parties is moot. Developers' concerns do not undermine the mootness doctrine. Developers' primary concern in challenging mootness appears to be how to deal with the circuit court's 2008 Order.[8] As will be addressed below, when a case becomes moot on appeal, the lower court's rulings can be vacated to avoid any undue prejudice to the parties. Thus, the concerns that the Developers raise can be addressed.[9]

Developers also contend that certain points raised on appeal by the Developers and the County fall within the public interest exception to mootness. First, Developers argue that they have raised the question on appeal of whether the Unilateral

---

[8]   As earlier noted, the 2008 Order concludes by ordering that:

> 1. The Maui Lani Project District as a whole is subject to the residential height restriction as determined in 1991 and codified at Maui County Code § 19.04.040, which states that building height "means the vertical distance measured from a point on the top of a structure to a corresponding point directly below on the natural or finish grade, whichever is lower."
>
> 2. Defendant County of Maui, is enjoined from taking any action which conflicts with the Court's determination of the applicable height restriction relative to the Sandhills project and the Fairways project including, but not limited to, the issuance of building permits the result of which would be inconsistent with Maui County Code § 19.04.04.
>
> 3. This Order shall remain in effect until further order of the Court.

[9]   Developers' concerns about future lawsuits should be assuaged by our vacating of the circuit court's 2008 Order and the judgments below. Moreover, such lawsuits are too speculative to prevent this appeal from being moot, especially given that we will vacate the 2008 Order and the judgment below. See Queen Emma Foundation v. Tatibouet, 123 Hawai'i 500, 508, 236 P.3d 1236, 1244 (App. 2010).

14

Development Agreement vested Developers with the rights to develop projects in the Maui Lani Project District in accordance with then-existing zoning ordinances. Second, Developers argue that the County has challenged on appeal whether HRS § 46-4 grants standing to neighboring property owners to bring a civil suit against the County to require the County to enforce zoning ordinances.

As noted above, the County takes the position that the appeal is moot. Indeed, the County's supplemental brief regarding mootness expressly contends that the public interest exception to mootness is inapplicable to this case. Therefore, we will not address the Developers' contention that a point of error raised by another party -- the County -- supports a public interest exception to mootness.

As to the point of error raised by Developers related to their vesting rights under the Unilateral Development Agreement, in determining whether the public interest exception applies, we look "to (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for future guidance of public officers, and (3) the likelihood of future recurrence of the question." Hamilton, 119 Hawai'i at 6-7, 193 P.3d at 844-45 (citation and internal quotation mark omitted). "[T]he cases in this jurisdiction that have applied the public interest exception have focused largely on political or legislative issues that affect a significant number of Hawai'i residents." Id. at 7, 193 P.3d at 845. Given these considerations, the public interest exception does not apply because the Developers' vesting rights under the Unilateral Development Agreement is an issue specific to the facts of this case and is of private concern to the Developers.

The challenges raised on appeal to the circuit court's grant of declaratory and injunctive relief to the Homeowners are

15

therefore moot. We address in the next section, the Homeowners' claim for attorneys' fees.

As noted above, the Developers' primary concerns as to mootness stem from the fact that the 2008 Order is still in effect. Thus, the concern is not mootness *per se*, but rather, how to appropriately dispose of a case that has been rendered moot by intervening legislation when a contrary underlying court order is still in effect.

As recognized in Aircall of Haw., Inc. v. Home Props., Inc., 6 Haw App. 593, 733 P.2d 1231 (1987), "where appellate review has been frustrated due to mootness[,]" the circuit court's judgment, which is unreviewable because of mootness, could lead to issue preclusion. Id. at 595, 733 P.2d at 1232. In Aircall of Haw., and subsequently, in Exit Co. Ltd. P'ship v. Airlines Capital Corp., 7 Haw. App. 363, 766 P.2d 129 (1988), this court noted that such a result would be unfair and resolved the potential for issue preclusion where a case is rendered moot on appeal by adopting "the federal practice of having the appellate court vacate the judgment of the trial court and direct dismissal of the case." Exit Co., 7 Haw. App. at 367, 766 P.2d at 131 (citation and internal quotation marks omitted). We likewise apply this resolution to the present case.

Accordingly, without reaching the merits but because the appeal is moot, we vacate the 2008 Order. We also vacate the Final Judgments entered on January 12, 2009 and September 30, 2009 to the extent they adjudicate Counts I and II of the operative Fourth Amended Complaint. We further remand the case to the circuit court with directions to dismiss the action.

B. **Attorneys' Fees and the Private Attorney General Doctrine**

On appeal, Homeowners raise a single point of error, challenging the circuit court's April 3, 2009 Fees/Costs Order. Although the circuit court granted Homeowners' request for

16

declaratory and injunctive relief, it denied Homeowners' request for attorneys' fees under the private attorney general doctrine.

The County asserts that the issue regarding attorneys' fees is moot because the issue regarding the building height definition is moot. On the other hand, Homeowners contend that, although all the issues in the cross-appeals are moot, their appeal from the Fees/Costs Order is not. They argue that this court may consider, under the private attorney general doctrine, whether the circuit court erred when it did not award attorneys' fees to Homeowners.

The County relies on Rapozo v. Better Hearing of Haw., LLC, 120 Hawai'i 257, 262, 204 P.3d 476, 481 (2009) for the argument that "[i]n the absence of a 'final decision from an appellate court' on the principal issues, attorney's fees are improper." Rapozo is inapposite to the present case because the petitioner in Rapozo was seeking attorney's fees and costs related to an appeal, not to the action below, id. at 261, 204 P.3d at 480, and the circumstances in that case were far different than here.

Although this court does not have jurisdiction to address the declaratory and injunctive relief rulings that are rendered moot by the intervening legislation, we do have jurisdiction to rule on the circuit court's order regarding attorneys' fees. This court has previously ruled that

> [a]lthough a claim for attorney's fees does not preserve a case which has otherwise become moot on appeal, . . . the question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction. Where the underlying controversy has become moot, there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fees question. Instead, the question of attorney's fees and costs must be decided based on whether the recipient of the attorney's fees and costs award can be considered to be the prevailing party in the underlying action, without regard to whether we think the [trial] court's decision on the underlying merits is correct.

17

Queen Emma Found. v. Tatibouet, 123 Haw. 500, 510, 236 P.3d 1236, 1246 (2010) (citations, internal quotation marks and brackets omitted).

First, we must determine whether Homeowners were the prevailing party in the court below before considering whether the private attorney general doctrine applies. Generally, a party in whose favor final judgment is rendered is the prevailing party in that court for purposes of attorney's fees. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 126, 176 P.3d 91, 125 (2008). "Although a plaintiff may not sustain his entire claim, *if judgment is rendered for him, he is the prevailing party for purposes of costs and attorneys' fees.*" Id. (quoting MFD Partners v. Murphy, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992) (internal citation, quotation mark and brackets omitted). Here, the circuit court granted Homeowners' request for declaratory and injunctive relief, ruling in Homeowners' favor and against the County and certain of the Developer parties. No one argues that Homeowners were not the prevailing party below, nor that the intervening ordinance had any effect on Homeowners' status as the prevailing party in the circuit court.

The next question is whether the private attorney general doctrine applies. Generally, under the "American Rule," each party pays his or her own litigation costs. Sierra Club II, 120 Hawai'i at 218, 202 P.3d at 1263. "This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent." Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Haw., 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000) (citation, internal quotation mark, and brackets omitted).

The Hawai'i Supreme Court has recognized the private attorney general doctrine as a judicially-created exception to the American Rule, noting that the doctrine "is an equitable rule

18

that allows courts in their discretion to award [attorney's] fees to plaintiffs who have vindicated important public rights." Sierra Club II, 120 Hawai'i at 218, 202 P.3d at 1263 (quoting Maui Tomorrow, 110 Hawai'i at 244, 131 P.3d at 527) (block quote format altered).

In applying this doctrine, courts consider three factors: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." Id.

The circuit court ruled that the private attorney general doctrine did not apply because the first and third prongs of the doctrine were not satisfied. Because we conclude that the circuit court did not abuse its discretion, we limit our consideration to the first and third prongs of the doctrine.

1.    **First prong: the strength or societal importance of the public policy vindicated by the litigation**

In regards to the first prong, Homeowners assert that their lawsuit "vindicated the important public policy of the rule of law," "clarified the County Charter," and "prevented the dangerous precedent of allowing a mayor to become a one-man county council, making the law by proclamation instead of by democratic process."

At a hearing on February 24, 2009, on Homeowners' motion for attorneys' fees and costs, the circuit court initially concluded that Homeowners met the first prong, reasoning that Homeowners' suit "vindicated important public rights." The circuit court also concluded that Homeowners met the second prong regarding "the necessity for private enforcement and the magnitude of the result and burden on the [Homeowners]." But the circuit court did not find that Homeowners met the third prong, the public benefit prong, reasoning that it was too expansive an

interpretation to conclude "that everybody in the County gets to benefit from clarification of or enforcement of a particular ordinance." Therefore, the circuit court denied Homeowners' motion for attorneys' fees pursuant to the private attorney general doctrine.

After the Hawai'i Supreme Court applied the private attorney general doctrine in Sierra Club II on March 16, 2009, Homeowners filed a motion for reconsideration of the circuit court's denial of attorneys' fees. Homeowners argued that the holding in Sierra Club II affirmed an expansive reading of the third prong and that, based on Sierra Club II, the circuit court should find that "the third prong of the doctrine is readily satisfied, justifying an award of attorneys' fees."

The circuit court heard Homeowners' motion for reconsideration on April 23, 2009. Based on Sierra Club II, the circuit court now questioned whether Homeowners had met the first prong after all. The court noted that "limited members of the general public [were] represented by the [Homeowners'] counsel, specifically the home owners whose view was impacted by an adjoining development." The court also remarked that the view planes in question were not ones statutorily protected under HRS § 205A-2(c)(3)(B) (2001 Repl.), the environmental statute protecting coastal zones. Moreover, noted the court, the effect of the Mayor's interpretation of the height ordinance was limited to the home owners living adjacent to certain projects within the larger Maui Lani Project District. Finally, the court observed that a number of people would have problems building houses on their land given the court's ruling and thus there were potentially more residents negatively affected by the circuit court's ruling than there were people benefitting from the ruling.

Furthermore, it is worth noting that the Homeowners' original complaint set out twelve counts, two of which sought

20

declaratory and injunctive relief against the County and most of the remaining counts alleging impacts to the Homeowners due to the development of the Sandhills Estates and Fairways and seeking to recover damages. The case was later bifurcated, over the Homeowners' objections, so that the declaratory and injunctive relief claims were separated from the damage claims. In many respects, therefore, this case was not brought to vindicate public policy, but rather to recover damages which ultimately were dealt with in a separate bifurcated proceeding. Even as to the injunctive and declaratory relief claims, although the Homeowners asserted that the Mayor had made an improper administrative decision as to the applicable height restriction, the ultimate goal of the claims was to protect the Homeowners' view planes and properties. That is, the relief sought by the Homeowners was focused on the effect of the County's interpretation of the height restriction on their properties, rather than on a broader issue of public policy.

Given the foregoing, we cannot conclude that the circuit court abused its discretion in concluding that Homeowners did not satisfy the first prong.

2.    **Third prong: the number of people standing to benefit from the decision**

The Homeowners assert that the lawsuit will benefit the entire Maui population by clarifying the role of county agencies and officials and make clear which height restriction definition applies in residential developments on Maui.

At the hearing on Homeowners' motion for attorneys' fees, the circuit court determined that the number of people who would benefit from the circuit court's ruling that the 1991 height definition applied was "very unclear." Furthermore, the court considered it to be too expansive to reason that all people on Maui benefitted from Homeowners' lawsuit to clarify and enforce an ordinance.

21

At the hearing on Homeowners' motion for reconsideration, the court continued to be unconvinced that Homeowners met the third prong. As earlier noted, the court observed that a limited number of residents benefitted from the ruling, and that there could be more residents hurt by the ruling than benefitted from it.

We agree with the circuit court that the number of people who benefitted from the circuit court's rulings is unclear and that probably it is a limited number of people. Unlike other cases where the private attorney general doctrine has been found to apply, there is no broad ruling of generally applicable law that will benefit large numbers of people. Moreover, the circuit court's rulings affect private property and does not affect public areas or public parks as in Honolulu Const. and Draying Co.

As originally noted by the supreme court when it first considered the private attorney general doctrine, proponents of the doctrine "maintain that limiting the application of the doctrine to exceptional cases pursuant to the three-prong test . . . provides effective constraints on judicial discretion." In re Water Use Permit Applications, 96 Hawaiʻi 27, 31, 25 P.3d 802, 806 (2001).

Because Homeowners do not satisfy all three prongs of the private attorney general doctrine in this case, the circuit court did not abuse its discretion in denying attorneys' fees.

V. **Conclusion**

Based on the foregoing, the following order and judgments entered by the Circuit Court of the Second Circuit are hereby vacated:

    (1)    the Findings of Fact, Conclusions of Law and Order Granting Motion for Partial Summary Judgment entered on December 31, 2008;

(2) the Final Judgment entered on January 12, 2009, to the extent that it entered judgment with respect to Counts I and II in the "Fourth Amended Complaint for Declaratory and Injunctive Relief and Damages"; and

(3) the Final Judgment entered on September 30, 2009, to the extent that it entered judgment with respect to Counts I and II in the "Fourth Amended Complaint for Declaratory and Injunctive Relief and Damages".

The case is further remanded to the circuit court with direction that the case be dismissed.

The "Order Granting in Part and Denying in Part [Homeowners'] Motion for Award of Attorneys' Fees and Costs," entered by the Circuit Court of the Second Circuit on April 3, 2009, is affirmed.

DATED: Honolulu, Hawaiʻi, September 19, 2013.

On the briefs:

David J. Gierlach
Lance D. Collins
for Plaintiffs/Counterclaim
Defendants/Appellants/Cross-Appellees

Madelyn S. D'Enbeau
Deputy Corporation Counsel
Department of the Corporation Counsel
for Defendants/Cross-Claim Defendants/
Appellees/Cross-Appellants/
Cross-Appellees

Ronald T. Ogomori
Nathan H. Yoshimoto
(Ogomori & Yoshimoto, LLP)
for Defendants/Intervener-Defendants/
Cross-Claim Defendants/Counterclaimants/
Cross-Claimants/Appellees/Cross-Appellees/
Cross-Appellants New Sand Hills, LLC,
VP&PK (ML), LLC and KCOM Corp.
   and
for Intervenors/Appellees/Cross-Appellees/
Cross-Appellants Hookahi, LLC and
Sandhills Estates Community Association

Presiding Judge

Associate Judge

Associate Judge